ROBB, Judge,
dissenting.
I respectfully dissent from my colleagues’ determination that summary judgment was improperly denied because the City is entitled to “discretionary function” immunity from Beloat’s suit. See Ind. Code § 34-13-3-3(7), op. at ¶ 18. Í believe that the decision takes too broad a view of the discretionary function exception.
As the majority notes, Peavler adopted the “planning/operation” test for determining whether a particular governmental act is discretionary and therefore entitled to immunity. See op. at ¶ 9. “Essentially, the test provides that a governmental entity is immune from liability when the alleged negligence arises from decisions which are made at the planning level, as opposed to the operational level.” Scott, 659 N.E.2d at 588-89.
Planning activities include acts or omissions in the exercise of a legislative, executive or planning function which involves formulation of basic policy decisions characterized by official judgment or discretion in weighing alternatives and choosing public policy. Government decisions about policy formation which involve assessment of competing priorities and a weighing of budgetaiy considerations or the allocation of scarce resources are also planning activities.
Peavler, 528 N.E.2d at 45 (internal citations omitted). Discretionary function immunity “must be narrowly construed because it is an exception to -the general rule of liability.” Id. at 46'. The City must therefore show “that the challenged act or omission was a policy decision made by consciously balancing risks and benefits.” Id..
Here, the City’s mayor stated the following in an affidavit designated on summary judgment:
For a number of years, [the City] was in the planning and‘then execution process of a road reconstruction project of Main Street from its intersection with Emerson Avenue to its intersection with 13th Street.... Rather than;doing piecemeal repairs on Main Street, [the City] chose to perform a. complete road reconstruction of the street. The Main Street Project consisted of pavement replace-, ment, enclosed storm drainage system, parking lanes, bike lane, curb and gutter, sidewalks and other improvements-to the Main Street pedestrian and vehicular corridor.
Appendix of Appellant at 32. Attached to the affidavit are minutes from Board of Works and Safety meetings at which the project design and funding was discussed, beginning in March of 2012. The “physical road reconstruction of the Main Street Project began in March 2013 with the entire reconstruction project concluding in November 2013.” Id. I find no support in the designated evidence for the proposition that the City made a conscious policy decision to perform no repairs—no matter how obvious the defect or serious the danger— to several blocks of Main Street beginning in March 2012 because a reconstruction project was being discussed. Nor do I find support for the proposition that the City engaged in an assessment of repairs that might need to be made pending the start of the reconstruction project and established a policy based upon that assessment. See Duffitt, 929 N.E.2d at 242 (“In the case of omissions, a conscious balancing may be demonstrated by evidence showing that the governmental entity con *698 sidered improvements of the general type alleged in the plaintiffs complaint. Where this is shown, there is no need for the entity to demonstrate that it considered and rejected the specific improvements alleged.”).
In short, simply filling a pothole does not strike me as the kind of “piecemeal repair” that was set aside in favor of the overall improvement project, assuming that the City in fact made the policy decision to eschew repairs of any kind. It is not a matter of repaving several feet of a lane of traffic or realigning an intersection, for example. Although there are certainly claims surrounding this time and place for which the City would have discretionary function immunity due to the reconstruction project, I do not believe this is one of them.
I would affirm the trial court’s denial of summary judgment.